UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHAEL HAYNES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHONAZ FOODS, INC., and DOES 1 to 25,<br><br>Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff MICHAEL HAYNES ("Plaintiff" or "Mr. Haynes"), on behalf of himself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1. Michael Haynes, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants Shonaz Foods, Inc. and DOES 1 through 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least fifty (50) Burger King restaurants in the state of Texas. Mr. Haynes' claims arise from his own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at eight (8) of Defendants' facilities also finding excessive sloping conditions.

2. Mr. Haynes asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Mr. Haynes seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Mr. Haynes' investigators, he believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 18-27 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Mr. Haynes brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies, practices and/or procedures to ensure that their facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Mr. Haynes seeks a permanent injunction requiring that:

2

a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

b. Defendants modify their existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or his own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Michael Haynes is, and at all times relevant hereto was, a resident of Austin, Texas. Plaintiff is a person with a mobility disability stemming from a gunshot when he was 20 years old. As a result of his disability, Plaintiff uses a wheelchair for mobility. Despite his significant injuries, Mr. Haynes likes to stay active, is an avid tennis player, and often travels to different areas around the state.

9. Mr. Haynes is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Shonaz Foods, Inc. is, and at all times relevant hereto has been, a Texas corporation, doing business in Texas as the owner, lessee, and/or operator of dozens of Burger King restaurants. Defendant Shonaz Foods, Inc.'s principal place of business is located at 211 E. 7th Street Suite 620 Austin, Texas 78701.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Mr. Haynes will amend this Complaint to assert their true names and capacities when known. He is informed and believes, and thereon asserts, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences asserted in this Complaint.

12. Mr. Haynes asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things asserted in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

13. Mr. Haynes is further informed and believes, and based thereon asserts, that Defendants collectively own, lease, and/or operate fifty (50) Burger King restaurants in the state of Texas as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Mr. Haynes Has Been Denied Full and Equal Access to Defendants' Facilities**

4

15. Mr. Haynes visited Defendants' facilities located at 3906 West Braker Lane, Austin, Texas, on February 23, 2024, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle and navigating the facilities due to the unlawful sloping conditions in Defendants' purportedly accessible parking areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

16. Despite the inaccessible conditions present at Defendants' facilities, Plaintiff plans to return to the facilities as he often travels to the area for a variety of reasons. On February 23, 2024, Mr. Haynes traveled to the area to visit the nearby shops. Mr. Haynes regularly travels to the area to visit his friends and to visit the shops in the area. In addition, Mr. Haynes regularly drives through the area and, due to the convenience of the restaurant location, intends to visit Defendants' facilities at least once a month. Furthermore, he intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Mr. Haynes' ability to access and safely use Defendants' facilities has been significantly impeded and he will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities**

**Full and Equal Access to Defendants' Facilities**

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

19.   Plaintiff is informed and believes, and based thereon asserts, that as Burger King franchisee pursuant to franchise agreements, Defendants utilize an "Operations Manual" (the "OPS Manual") that is part of the full Manual of Operating Data issued by the franchisor when the franchise disclosure document ("FDD") is signed. The Burger King FDD that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.restfinance.com/app/pdf/fdd/Burger-King-2021.pdf. It is Plaintiff's information and belief that the 611 Manual contains the franchisee's obligations regarding the required standards and specifications and the franchisee agrees to comply with the Manual. FDD, p.59. While the full Manual is not available publicly, the FDD provides the table of contents. FDD, p. 898-904.

20.   Pursuant to the FDD, Defendants are provided with the Manual and all the accompanying materials, that provide the standards that the franchisee is required to follow— containing "[y]ou must operate the Restaurant in strict conformity with the methods, standards and specifications as we prescribe in the MOD Manual or otherwise in writing.."  FDD, p.75. Specifically, the FDD states, in relevant part:

A.   M.O.D. Manual

Franchisee acknowledges and agrees that prompt adoption of and adherence to the BURGER KING System, including all of the provisions of the MOD Manual, as amended from time to time, are reasonable, necessary and essential to the image and success of all BURGER KING Restaurants.

. . .

Franchisee acknowledges that the MOD Manual is designed to protect BKC's standards, the BURGER KING System, and the BURGER KING Marks, and not to control the day-to-day operation of the Franchised Restaurant.

FDD, p. 180.

21. Pursuant to the FDD, Defendants are required to maintain the restaurant buildings' interior and exterior in compliance with the maintenance policies, practices, and/or procedures related to "Repairs and Maintenance." The FDD states:

> Lessee shall also put, keep and maintain in good repair and free from dirt, snow, ice, rubbish and other obstructions or encumbrances, the sidewalks, parking areas, yards, plantings, gutters and curbs in front of and adjacent to the Building.

FDD, p. 331, § 5.2. The FDD states in Item 1: "There are other laws and regulations applicable to businesses generally (such as the Americans with Disabilities Act) with which you must comply."

22. When making alterations to their facility, Defendants are also required to "comply with (i) the requirements of Title III of the Americans With Disabilities Act of 1990 ("ADA") as same may be amended from time to time; (ii) the Americans With Disabilities Act Accessibility Guidelines 1991 ("ADAAG") as same may be amended from time to time which is a part of the ADA; (iii) the 2010 ADA Standards . . ." FDD, p. 332, § 5.3. Defendants have the same requirements for the completion of construction work: "the Architect shall inspect the Remodeled Restaurant and complete the Burger King® 2004 ADAAG Checklist V1.2 (which is currently under revision to reflect the 2010 ADA Standards), and complete a certificate of inspection, on a form to be provided by Lessor, certifying that the Remodeled Restaurant is in compliance with Title III of the ADA, the ADAAG, the 2010 ADA Standards and the Codes." FDD, p. 357.

23. Defendants are provided with an express instruction when "refreshing" their facilities. The FDD mandates Defendant to: "[b]ring exterior into compliance with all federal, state and local rules and regulations, including the Americans With Disabilities Act." FDD, p. 865, Exhibit A.

24. Defendants are also required to enter into lease agreements containing specific terms setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace

7

the parking lot, curbs, driveways, and sidewalks on the leased property. Plaintiff is further informed and believes, and based thereon asserts, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of twenty years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibility for such maintenance.

25.     The FDD requires Defendants to complete extensive training where Defendants must designate a "Managing Director." The FDD states, "[y]ou must designate an individual (which can be you) as Managing Director, who must be approved by us, must complete our training program and must personally direct the "on premises" day-to-day operations of the franchised Restaurant(s) . . ." FDD, p. 73. Further, "[g]enerally, one of the conditions for Entity ownership is that one or more individuals or entities designated as "Owners" guarantee and be responsible for the Franchisee's obligations to us." *Id*. The FDD also mandates the owner to attend the Franchise Orientation before opening or acquiring a Restaurant.

26.     Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, and/or procedures concerning their daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through a head of operations of regions, who supervises vice presidents of regions, who in turn directly supervise district or general managers, and then individual restaurant managers. Plaintiff is informed and believes that these positions collectively constitute the "Managing Director" charged with overseeing operations of Defendants' restaurants for compliance with Burger King policies through regular and complete inspections of Defendants' restaurants.

27. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

28. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, and/or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

    a. 713 N Bell Blvd, Cedar Park, Texas

        a. The purportedly accessible curb ramp projected into an access aisle[1].

    b. 3906 W Braker Lane, Austin, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

    c. 2732 SW Military Drive, San Antonio, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

    d. 20290 I 37, Elmendorf, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

    e. 2095 W Oaklawn Road, Pleasanton, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

    f. 6246 S HWY 77, Riviera, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

    g. 101 FM306, New Braunfels, Texas

        a. The purportedly accessible curb ramp projected into an access aisle.

---

[1] Pursuant to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5.  The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

       h.   18600 I-35, Buda, Texas

            a.   The purportedly accessible curb ramps projected into the access aisles.

29.    As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

30.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31.    Mr. Haynes' claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

32.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

33.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any Shonaz Foods, Inc. and DOES 1 to 25 location.

34.    <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

35. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

36. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

37. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

38. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

<u>**SUBSTANTIVE VIOLATION**</u>

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101, *et seq.*]**

**(Against all Defendants)**

39. Plaintiff restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

40.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, he is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

41.     Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

42.     Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

43.     The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of their facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

44.     The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

45.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

46.     Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify their existing policies, practices and/or procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

47.     Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

48. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

49. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify their existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: April 17, 2024                                       Respectfully Submitted,


*/s/ John D. Bosco*
John D. Bosco
BOSCO BLESS PLLC
State Bar No. 24045533
4034 Bishop Lane
Dallas, Texas 75244
Phone: (214) 997-4434
john@boscobless.com

*Counsel for Plaintiff and the Class*


Benjamin J. Sweet
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: 412-857-5350
ben@nshmlaw.com


Jordan T. Porter
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com